UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHARLES M. LAKAMP and MARIANNE LAKAMP, husband and wife, individually and as Trustees of THE LAKAMP FAMILY TRUST UTD FEBRUARY 23, 1999; and CHARLES M. LAKAMP, doing business as METROM ASSOCIATED SERVICE, a California sole proprietorship, | Case No. 1:20-cv-00544-DCN  **MEMORANDUM DECISION AND ORDER** |
|      Plaintiffs, | |
| v. | |
| JOHN L. RUNFT, an individual; JOHN CRIGLER, an individual; JOHN MALLETTA, an individual; CWT, LLC, an Idaho limited liability company; IRWS, LLC, an Idaho limited liability company; DORFKRUG INTERNATIONAL, INC., an Idaho corporation; SIMCO VENTURE FUND, LLC, an Idaho limited liability company; RUNFT & STEELE LAW OFFICES, PLLC, an Idaho professional limited liability company, and DOES 1 through 50, inclusive, | |
|      Defendants. | |

## I.  INTRODUCTION

Before the Court are four motions filed by Plaintiffs Charles M. LaKamp, Marianne

LaKamp, LaKamp Family Trust UTD February 23, 1999, and Metrom Associated Service

MEMORANDUM DECISION AND ORDER - 1

(collectively, the "LaKamps"). The four motions are a Motion to Modify the Scheduling Order (Dkt. 142), a Motion to Amend/ Correct the Amended Complaint (Dkt. 143), a Motion to Continue Trial and Reopen Discovery (Dkt. 144) and a Motion for Reconsideration (Dkt. 145). Defendants IRWS, LLC; John Crigler; CWT, LLC; Dorfkrüg International, Inc. ("DKI"); Simco Venture Fund, LLC; and the Estate of John Malletta, deceased, all oppose each motion. Dkts. 146–151.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES all four Motions.

## II. BACKGROUND

This case revolves around the LaKamps' $250,000 investment in a landfill acquisition project undertaken by and between the Defendants. The Court has previously set forth in detail the factual background of this case, which can be found in its Order at Dkt. 129. For the sake of brevity, the Court does not recount that factual history here, but instead will outline only the relevant procedural background.

This case was filed more than three years ago on November 30, 2020. Dkt. 1. After the parties submitted their discovery and litigation plans, the Court entered a Scheduling

Order on March 8, 2021,[1] setting forth various deadlines for this case. In relevant part, the Scheduling Order stated "[m]otions to amend pleadings… must be filed on or before June 7, 2021. This deadline will be extended only for good cause shown." Dkt. 31, at 2. In addition, the Scheduling Order set November 5, 2021, as the deadline for all fact discovery. *Id.* at 4.

On June 30, 2021, the LaKamps filed their Amended Complaint (Dkt. 45), which all Defendants answered (Dkts. 45–49). In their answer, Defendants Simco and CWT filed counterclaims against the LaKamps for intentional interference with contract, intentional interference with prospective economic gain, and breach of fiduciary duty. Dkt. 48, at 20–22.  In light of the additional counterclaims and as stipulated to by the parties, the Court issued an Order Extending Deadlines which reset June 6, 2022, as the deadline for fact discovery.[2] Dkt. 67.

Then proceeded a round of dispositive motions, in which all parties moved for summary judgment (Dkts. 76; 78–81). The Court held a hearing on these motions on August 4, 2022. After receiving supplemental briefing following the hearing, the Court granted all Defendants' Motions for Summary Judgment, and granted in part and denied in part the LaKamps' Motion for Summary Judgment. Dkt. 129.[3] The Court's order resolved all claims between the LaKamps and all Defendants, except for CWT and Simco's

---

[1]This scheduling order was entered by Magistrate Judge Dale and adopted by the undersigned at Dkt. 38.
[2]The Court had previously issued two other orders extending the deadline for factual discovery initially to January 26, 2022 (Dkt. 53), then to April 22, 2022 (Dkt. 62).
[3]The Court also denied as moot the LaKamps' Motion to Amend to Seek Punitive Damages, which they had filed on May 6, 2022. Dkt. 77.

counterclaims against the LaKamps.

The LaKamps again moved to amend on May 26, 2023, seeking to add additional claims against Simco, DKI, and John Crigler and requesting declaratory judgment on various issues related to Simco and the LaKamps' membership therein. Dkt. 131. The Court denied the Motion on July 24, 2023, finding no good cause for the proposed late amendment and noting that "the Court is unaware of any reason why these proposed amendments could not have been filed two years ago." Dkt. 139, at 2–3.

On July 25, 2023, the Court issued an Order Setting Jury Trial setting Simco and CWT's counterclaims (the remaining triable claims after summary judgment) for a five-day trial to begin on May 20, 2024, in Boise, Idaho. Nearly a year later on March 1, 2024, the LaKamps filed the four instant motions: a Motion to Modify the Scheduling Order (Dkt. 142), a Motion to Amend/ Correct the Amended Complaint (Dkt. 143), a Motion to Continue Trial and Reopen Discovery (Dkt. 144) and a Motion for Reconsideration (Dkt. 145) of the Court's Order on various previous motions. All defendants opposed each of these motions. Dkts. 148–51. On April 9, 2024, the LaKamps, Simco, and CWT filed a Joint Mediation Statement indicating that Simco and CWT would dismiss their counterclaims if the Court granted the LaKamps' pending motions. Dkt. 153. The parties also filed a stipulation indicating that they believe the trial set to begin May 20, 2024, should be reset "to allow the Court time to rule on the Pending Motions." Dkt. 154, at 3. All four motions have been fully briefed and are ripe for review.

## III. LEGAL STANDARD

### a. Federal Rule 16[4]

Once entered, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(e). This scheduling order "may be modified only for good cause and with the judge's consent." *Id.* at 16(b)(4). A district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment).

Rule 16's good cause inquiry focuses primarily on "the diligence of the party seeking the amendment." *Id.* "Rule 16 was designed to facilitate more efficient disposition of cases by settlement or by trial. If disregarded it would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Walker v. City of Pocatello*, 2017 WL 1650014 at *1 (D. Idaho May 1, 2017) (quoting *Johnson*, 975 F.2d at 610). The Ninth Circuit has instructed that a "district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee notes (1983 amendment)). Put simply, "good cause" means scheduling deadlines cannot be met despite a party's diligence. 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed.1990).

---

[4]The LaKamps' Motion to Amend, Motion to Modify the Scheduling Order, and Motion to Continue are all governed by Federal Rule 16. *See Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 607-08 (9th Cir. 1992) (explaining that "once a district court has filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 . . . establishing a timetable for amending pleadings," Rule 16's standards control any motion to amend the pleadings) (cleaned up).

### b. Motion for Reconsideration

Granting or denying a motion for reconsideration is a matter within a district court's discretion. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (cleaned up). Ultimately, it is the court's duty "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In certain circumstances, this may mean that a court must reconsider, modify, or even reverse a prior determination. Other times, this means a court must advance a case.

Motions to reconsider involve a two-step inquiry. First, a party must "establish that they have the right to ask for reconsideration; that is to say, they must establish that one or more of the limited grounds for reconsideration are present." *United States ex rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 358 F. Supp. 3d 1096, 1098 (D. Idaho 2019).  If a party can show reconsideration is warranted, "the moving party must then convince the court that their purported reasons rise to the level of reversal. *Id.*

Because "reconsideration is an extraordinary remedy," it is available only when: "(1) the district court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in the controlling law." *Dickinson Frozen Foods v. Fps Food Process Solutions Corp.*, 2020 WL 2841517, at *10 (D. Idaho June 1, 2020) (citing *Sch. Dist. No. 1J, Multnomah County. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). The Supreme

Court has instructed that courts "should be loath to [reconsider] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 817(1988) (cleaned up)).

Furthermore, "motions for reconsideration are generally disfavored[] and may not be used to present new arguments or evidence that could have been raised earlier." *Am. Rivers v. NOAA Fisheries*, 2006 WL 1983178, at *2 (D. Or. 2006) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)). In deciding them, courts should bear in mind the importance of finality and the conservation of judicial resources. *See Carroll v. Nakatani*, 342 F. 3d 934, 945 (9th Cir. 2003).

## IV. ANALYSIS

In their Motions, the LaKamps cite to a somewhat related case involving Defendant IRWS that was filed in this Court in November 2023 and decided shortly thereafter, *IRWS v. Elmore County*, No. 1:23-cv-00485-DCN. Because the LaKamps have asked the Court to take judicial notice of the facts in that case, and because the LaKamps' arguments rely in part on those facts, the Court provides a brief summary of the factual background in *Elmore County*.[5]

The landfill that is the subject of this case was originally owned by Idaho Waste Systems, Inc. ("IWS"). In 2016, the Idaho Department of Environmental Quality ("DEQ") issued a notice to IWS that the landfill was in violation of several environmental and

---

[5] For a more detailed recitation of the facts of that case, see *IRWS v. Elmore County*, No. 1:23-cv-00485-DCN at Dkt. 30.

administrative regulations. IWS and DEQ subsequently entered into a consent order requiring IWS to take certain remedial measures. In 2018, CWT (a defendant in this case), began negotiations to acquire the landfill. Before the acquisition went through, DEQ issued another notice of violation to IWS, and IWS entered into another consent order with DEQ. CWT subsequently acquired the landfill from IWS, and IRWS (another defendant in this case) subsequently acquired CWT. As a condition of approval to acquire the appropriate licensure, IRWS assumed the obligations of the consent orders. However, unbeknownst to IRWS, IWS had persisted in its environmental violations in contravention of the consent orders prior to CWT's acquisition.[6] When IRWS discovered these violations, it notified DEQ. Elmore County, in which the landfill operates, subsequently issued IRWS a notice of violation. Negotiations between IRWS and Elmore County ensued, and the County eventually issued a second notice of violation to IRWS based upon additional violations related to a tire disposal company IRWS had purchased. These violations had also taken place unbeknownst to IRWS and prior to its acquisition of the company. More negotiations took place, but Elmore County ultimately revoked IRWS's Conditional Use Permit to operate the landfill. IRWS brought a challenge to the revocation, and the Court upheld Elmore County's decision. *Elmore County*, at Dkt. 30.

The LaKamps claim that after reviewing the Court's decision in *Elmore County*, they made public records requests to DEQ and Elmore County and discovered more than

---

[6]More specifically, IWS had continued to accept tires for disposal despite being prohibited from accepting more tires under the consent order, and had buried roughly 300,000 tires on the property.

MEMORANDUM DECISION AND ORDER - 8

half a dozen consent orders and notices of violations related to the landfill.[7] These records and the facts underlying them constitute the "new evidence" the LaKamps proffer in support of each of their Motions. Therein, the LaKamps argue that this previously undiscovered evidence gives rise to additional claims and warrants reconsideration of the issues the Court ruled upon at summary judgment. They also argue that these additional facts necessitate the reopening of discovery and continuance of the currently scheduled trial. The materiality of this new evidence, in the LaKamps' view, boils down to this: "[h]ad Mr. LaKamp known that the Landfill was the subject of numerous environmental violations and continuous consent orders limiting its operation for which IRWS was to assume liability, Mr. LaKamp would never have made any kind of investment into IRWS and which flowed to Simco." Dkt. 145-1, at 7.

Defendants' arguments all have the same thrust: that the LaKamps' newly discovered evidence could have easily been discovered at any point prior to or during this litigation, and that the LaKamps' failure to identify the evidence at an earlier stage represents a lack of diligence in complying with the Scheduling Order. This lack of diligence, they argue, bars the LaKamps from obtaining relief on any of their motions. For the reasons outlined below, the Court agrees.

### A. Motions to Continue, Amend, and Modify Scheduling Order

The LaKamps' Motions to Continue Trial and Reopen Discovery, to Amend, and to Modify the Scheduling Order are all governed by Federal Rule 16. Under Rule 16, "the

---

[7]The documents obtained were all provided by DEQ, as Elmore County had not responded to the LaKamps' request by the time they filed their Motions.

touchstone for deciding whether the request should be granted" is diligence. *Keller v. Keller*, 2022 WL 2291201 *4 (D. Idaho June 24, 2022) (quoting *Lacy v. Am. Biltrite, Inc.,* 2012 WL 909309, at *3 (S.D. Cal. March 16, 2012). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

The LaKamps argue that they did exercise diligence because they made requests for production, in response to which they claim Defendants were obligated to disclose the environmental violations. The specific RFP the LaKamps cite in support of this contention is as follows:

> Produce all correspondence and ESI by, between, and/or among Defendants pertaining in any way to the solicitation of investments for the purchase of real and/or personal property, and/or intellectual property from Idaho Waste Systems, Inc. from January 1, 2018 to the present.

Dkt. 152-1, at 2.

The foregoing does not demonstrate diligence in complying with the Scheduling Order. The LaKamps did not request the environmental records they now present until after the Court issued its decision in *Elmore County*, more than three years after their initial investment into the landfill, two years after the deadline for amendment, and almost a year after the deadline for factual discovery. The LaKamps' RFP described above was for correspondence related to the solicitation of investments, and did not request or even mention environmental records. The LaKamps' failure to make its public records request in due time reflects a lack of diligence.

Furthermore, the LaKamps did not promptly and diligently seek to amend their

Complaint. The LaKamps made their $250,000 investment in the landfill project in late September of 2019. *All* of the records that the LaKamps specifically cite in their Motions were created prior to that date, with one consent order as early as 2012. Dkt. 145-1, at 6. The LaKamps obtained these records via a public records request, seemingly very quickly and with relative ease.[8] The LaKamps do not cite to any unforeseen circumstances that prevented them from seeking these records before making their investment, let alone before commencing this litigation. The Court finds this quite perplexing; it seems common sense that any investor would inquire into a landfill's environmental records before investing in it, as environmental concerns surrounding landfills notoriously abound. Why, then, did the LaKamps wait until years after their initial investment to request environmental records for the landfill, and even longer to seek amendment of their complaint? This again evidences the LaKamps' failure to exercise due diligence here.

While the LaKamps attribute the delay to Defendants' allegedly deficient responses to their RFPs, this argument fails for two reasons. First, as the Court has noted, the LaKamps' RFPs made no mention of environmental records, and Defendants needn't have provided them in their response. Second, even if Defendants *had* been obligated to provide environmental records to be responsive to the RFPs, this argument does nothing to address the LaKamps' untimely delay in requesting the records and petitioning this Court for modification, amendment, and reconsideration, after the *Elmore County* case was filed last

_____

[8] Although the LaKamps do not state the exact date(s) that they submitted their records requests, they do indicate that the requests were made at some point after the Court issued its decision in *Elmore County* on December 21, 2023, and that they received the records shortly thereafter on February 9, 2024. Dkt. 145-1, at 6.

MEMORANDUM DECISION AND ORDER - 11

year. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.  The Court therefore DENIES the LaKamps' Motion to Modify the Scheduling Order, Motion to Continue and Reopen Discovery, and Motion to Amend.

### B.  Motion to Reconsider

The threshold rule for motions to reconsider allows parties to seek reconsideration only in a few limited circumstances. Here, the LaKamps cite the newly discovered evidence described above as the basis for reconsideration.[9] When newly discovered evidence forms the basis of a motion for consideration, it must be evidence "which by due *diligence could not have been discovered* in time" to obtain alternative relief. Fed. R. Civ. P. 60(b) (emphasis added). But the evidence here *could* have been discovered prior to the Court's summary judgment ruling here. As with the other three motions, the LaKamps' lack of diligence loses them the battle. And as the Court has explained above, the "new" evidence that forms the bases of all four of the LaKamps' motions is public information, some of it dating back to as early as 2012. This evidence was discovered via a simple public records request, which the LaKamps could have made prior to investing in the landfill, prior to commencing this litigation, and certainly prior to mere weeks before trial.

Because the LaKamps' "new" evidence could have been discovered and presented

---

[9]The LaKamps also appear to cite fraud as a basis for reconsideration, arguing that the Defendants' failure to provide information related to the environmental violations in response to the aforementioned RFP constitutes a fraudulent omission. However, as the Court has already explained, the RFP did not request environmental information, and the Defendants did not have a duty to disclose such in response to that RFP or otherwise. Accordingly, the Court finds no grounds for reconsideration on the basis of fraud here.

prior to summary judgment through the exercise of reasonable diligence, they have failed to "establish that one or more of the limited grounds for reconsideration are present." *Big-D Constr. Corp.*, 358 F. Supp. 3d at 1098. Accordingly, the Court ends its inquiry there and DENIES the LaKamps' Motion for Reconsideration.

## IV. CONCLUSION

In sum, the diligence factor—the "touchstone for deciding whether a [continuance] request should be granted"—illustrates the LaKamps have not established good cause for a continuance. *Keller v.* Keller, 2022 WL 2291201 *4 (D. Idaho June 24, 2022). Neither have they established good cause for amendment or the reopening of discovery at this late stage, just weeks before trial is scheduled to begin. The prejudicial delay to both the Court and to the Defendants in reopening the Scheduling Order and essentially beginning this case anew also warrants denying the LaKamps' Motions to Amend, to Modify the Scheduling Order, and to Continue Trial and Reopen Discovery. Furthermore, the "new" evidence LaKamps present in support of their Motion to Reconsider could have been timely discovered through reasonable diligence, which the LaKamps failed to exercise. Reconsideration is not warranted here, and the Court will not allow this case to be delayed any further. Accordingly, the Court DENIES all of the LaKamps' motions.

## V. ORDER

NOW, therefore, **IT IS HEREBY ORDERED**:

1. The LaKamps' Motion to Modify Scheduling Order [Dkt. 142], Motion for Leave to Amend First Amended Complaint [Dkt. 143], Motion to Continue Trial

MEMORANDUM DECISION AND ORDER - 13

and Reopen Discovery [Dkt. 144], and Motion for Reconsideration [Dkt. 145], are DENIED.

2. The parties are instructed to proceed in accordance with the deadlines set forth in the Court's Order Setting Jury Trial at Dkt. 140.

DATED: April 15, 2024

David C. Nye
Chief U.S. District Court Judge