UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHARLES M. LaKAMP and MARIANNE LaKAMP, husband and wife, individually and as Trustees of *The LaKamp Family Trust UTD February 23, 1999*; and CHARLES M. LaKAMP, doing business as *Metrom Associated Service*, a California sole proprietorship,<br><br>              Plaintiffs,<br><br>v.<br><br>JOHN L. RUNFT, an individual; JOHN CRIGLER, an individual; JOHN MALLETTA, an individual; CWT, LLC, an Idaho limited liability company; IRWS LLC, an Idaho limited liability company, DORFKRÜG INTERNATIONAL, INC., an Idaho corporation; SIMCO VENTURE FUND, LLC, an Idaho limited liability company; RUNFT & STEELE LAW OFFICES, PLLC, an Idaho professional limited liability company; and DOES 1 through 50, inclusive,<br><br>              Defendants. | Case No. 1:20-cv-544-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court is Defendants John L. Runft and Runft & Steele Law Offices, PLLC's (collectively "Runft Defendants") Motion for Attorney Fees. Dkt. 159. The Runft Defendants request an award of $83,721.50 in attorney's fees, and $4,495.66 in costs. Dkt. 159, at 13. Because oral argument would not significantly aid its decision-making process,

the Court will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons below, the Motion for an award of attorneys' fees is GRANTED in PART and DENIED in PART. The Runft Defendants are entitled to an award of $48,503.56 in attorney's fees.

## II. BACKGROUND

The Court has set forth the background of this case previously (Dkt. 129, at 2–17) and incorporates that background by reference. However, a relevant brief summary will be provided here. This case centers around Plaintiffs Charles and Marianne LaKamp's (collectively, "the LaKamps") investment into a landfill project in Elmore County, Idaho. John Runft is an Idaho attorney who first told Charles LaKamp ("Charles") about the landfill project when the two met at the Miner's Jubilee in Baker City, Oregon, in July of 2019. Charles would go on to invest $250,000.00 in the project, although he maintained throughout this case that the money was a "short term loan" for a railcar tipper to be used at the landfill, rather than an investment in DorfKrug International, Inc. ("DKI") by way of IRWS, LLC ("IRWS"), the current owner and operator of the landfill.

Ultimately, Charles wired the $250,000.00 in two parts to a trust account belonging to Runft's law firm, Runft & Steele Law Offices, PLLC ("R&S"). As part of that investment, Charles received a 2.2% interest in Simco Venture Fund, LLC ("Simco") and an option to contribute $1,750,000.00 in the future for an additional 14.3% interest in Simco. Charles subsequently became worried about his investment and hired an outside

attorney at Runft's suggestion.[1] Charles asked for his original investment to be returned in early 2020.

The LaKamps filed the instant suit in November 2020, and Defendants filed a slew of motions for summary judgment on May 6, 2022. In its Summary Judgment Order filed on March 1, 2023, the Court found the LaKamps had failed to raise a materially disputed fact as to any of their claims and granted summary judgment in favor of Defendants. Dkt. 129. The crux of that decision was: (1) the fact that the LaKamps did indeed receive a 2.2% interest in Simco upon investing their money; (2) the evidence indicated the LaKamps were investing in the business, rather than in a railcar tipper; and (3) Charles had signed a Memorandum of Understanding which embodied this agreement. Additionally, Charles was aware of his interest in Simco before filing the instant lawsuit. As to the causes of action related to attorney malpractice leveled only at Runft, the Court found such claims failed because there was no attorney-client relationship between the LaKamps and Runft.

The Runft Defendants now seek attorney's fees and costs as the prevailing party in litigation involving a commercial transaction and the Idaho Consumer Protection Act, and they also contend they should recover because the litigation was frivolous. The LaKamps seem to concede that some attorney's fees and costs are appropriate, but argue any award should be reduced by a percentage amount for the claims which cannot be supported under these theories. The matter is now ripe for review.

---

[1] The LaKamps had retained the services of another attorney in R&S for an unrelated property purchase, so Runft was concerned that any further advice he provided on investments would present a conflict.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 54(d)

Under the Federal Rules of Civil Procedure ("FRCP"), a party may move for attorney's fees if the motion: (1) is filed no later than 14 days of entry of judgment; (2) specifies the judgment and statute, rule, or other grounds entitling the party to the award; (3) states the amount sought or provides a fair estimate of it; and (4) discloses, if ordered by the court, the terms of the agreement for fees and services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B)(i)–(iv). As to the second requirement, "it is the nature of the claim on which a party prevailed that determines the law that applies (federal or state) to any request for attorney's fees." *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 65 F.4th 1145, 1151 (9th Cir. 2023).

Federal courts sitting in diversity apply state law to state claims when determining whether a party is entitled to any award. *Safeco Ins. Co. of Ill. v. LSP Products Grp., Inc.*, 659 F. Supp. 3d 1131, 1135 (D. Idaho 2023). The state laws applicable to the Runft Defendants' Motion are Idaho Code §§ 12-120(3) and 48-608(5).

### B. Idaho Code § 12-120(3)

Under Idaho Code § 12-120(3), the Court must award reasonable attorney's fees to the prevailing party in a civil action to recover on a contract relating to the purchase or sale of merchandise, or in any other commercial transaction unless otherwise provided by law. The statute defines a commercial transaction as "all transactions except [those] for personal or household purposes." *Id.* To determine if attorney's fees should be awarded pursuant to § 12-120(3), the Court must analyze: (1) if there is a commercial transaction that is integral

to the claim; and (2) if the commercial transaction [is] the basis upon which recovery is sought. *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 36 P.3d 218, 223 (Idaho 2001). "In other words, the relevant inquiry is whether the commercial transaction constituted 'the gravamen of the lawsuit.'" *Garner v. Povey,* 259 P.3d 608, 615 (Idaho 2011) (citing *Great Plains*, 36 P.3d at 224).

### C.  Idaho Code § 48-608(5)

The Idaho Consumer Protection Act ("ICPA") allows a court to award costs to the prevailing party and grants it discretion to award attorney's fees to a prevailing defendant if it finds the plaintiff's claims are "spurious or brought for harassment purposes only." Idaho Code § 48-608(5). A court that makes the aforementioned finding should apportion fees between claims that qualify as "spurious" and those that do not. *See Tricore Investments, LLC v. Estate of Warren through Warren*, 485 P.3d 92, 123 (Idaho 2021). In particular, the statute limits an award of fees to an "action brought by a person *under this section*." Idaho Code § 48-608(5) (emphasis added).

### D.  Frivolous Lawsuit

Courts have inherent power to assess attorney fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (cleaned up). Bad faith exists when "the legal and factual basis for the action [is] totally frivolous," or when the claim is colorable but brought with an improper purpose. *BKB v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002). Courts should exercise their discretion to award attorney fees "only in exceptional cases and for

dominating reasons of justice." *Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751, 756 (9th Cir. 1986).

### E. The Lodestar Method

"After establishing that a plaintiff is entitled to attorney's fees, the Court must calculate a reasonable fee award." *Animal Legal Def. Fund v. Otter*, 2016 WL 2910266, at *2 (D. Idaho May 18, 2016). To calculate a reasonable fee award, courts in the Ninth Circuit use the two-step "lodestar method." *Mares-Orozco v. Guzman*, 2023 WL 5179674, at *4 (D. Idaho Aug. 10, 2023) (citing *Edmo v. Idaho Dep't of Correction*, 2022 WL 16860011, at *2 (D. Idaho Sept. 30, 2022)). The lodestar method multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). To establish the requested hours and rate are reasonable, the "burden is on the party seeking the fee award and can be carried by submitting evidence and documents supporting the hours worked." *Id.* (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)).

### IV. DISCUSSION

The Runft Defendants filed their Motion within 14 days of the entry of judgment, and element four of FRCP 54 is inapplicable. As such, the Court turns to requirements two and three. The LaKamps' Amended Complaint contains twelve causes of action. Seven, eight, and nine are brought under federal law, and the rest involve state law. Therefore, the Court assesses claims 1-6 and 10-12 under the Idaho statutes which were provided by the Runft Defendants as support for their requests—namely Idaho Code §§ 12-120(3) and 48-608(5).

The only ground the Runft Defendants provide for their request for attorney's fees on the LaKamps' federal causes of action is their contention that this was a frivolous lawsuit for which the Court can inherently award fees. Thus, fees will only be awarded on the federal causes of action if such claims can be deemed frivolous.

After determining whether the Runft Defendants are entitled to fees on the LaKamps' state and federal claims, the Court will then analyze the records provided by the Runft Defendants to ensure all entries support an award of fees. As outlined below, the Runft Defendants have satisfied the requirements of FRCP 54(d)(2)(B).

### A. Idaho Code § 12-120(3)

The LaKamps only specifically oppose an award of fees under this section of Idaho Code as to claims 11 and 12. However, the Court must still determine whether a commercial transaction is the "gravamen" of each claim. *See Alcala v. Verbruggen Palletizing Solutions, Inc.*, 531 P.3d 1085, 1113 (Idaho 2023).

The Court holds the LaKamps' investment into the commercial landfill project qualifies as a commercial transaction under § 12-120(3). "A commercial transaction can be characterized as one in which the purpose for entering into the transaction was to generate income." *Carter v. Gateway Parks, LLC*, 483 P.3d 971, 984 (Idaho 2020) (citing *Stevens v. Eyer*, 387 P.3d 75, 80 (Idaho 2016)).[2] Charles invested $250,000.00 with an understanding that he would receive an interest in Simco, and presumably, receive a return

---

[2] The debate between the various Defendants and the LaKamps as to whether the LaKamps' money was intended as a loan or an investment is immaterial here. As the court noted in *Carter*, whether characterized as a loan or an investment, where an investor's purpose is to generate income, a commercial transaction exists. *Carter*, 483 P.3d at 984.

on his investment. Because his purpose was to generate income, his investment constitutes a commercial transaction. Thus, the Runft Defendants are entitled to an award of fees and costs as the prevailing party on the state causes of action the LaKamps unsuccessfully asserted with respect to Charles's investment.[3]

### 1. Fraud (Claim 1)

As part of their fraud claim, the LaKamps asserted the Defendants collectively misrepresented what the LaKamps investment would be used for and what the LaKamps would receive in return. In bringing this claim, the LaKamps were clearly attempting to recover on the basis of their investment, a commercial transaction, and the Runft Defendants are thus able to recover fees under § 12-120(3) on this claim.

### 2. Fraud in the Inducement (Claim 2)

Similar to their first cause of action, the LaKamps maintained they only signed the Memorandum of Understanding embodying the agreement to invest because the Runft Defendants misrepresented both what the LaKamps would be investing in, and what the LaKamps would receive in return. Just as above, the LaKamps' fraud in the inducement claim attempted to recover on their investment, a commercial transaction, and the Runft Defendants can consequently recover fees under § 12-120(3) on this claim.

### 3. ICPA (Claim 3)

The LaKamps sought to recover under the Idaho Consumer Protection Act in three different ways. First, for the Runft Defendants' alleged unfair and deceptive acts, including

---

[3] There is no debate among the parties that the Runft Defendants are prevailing parties.

purported misrepresentations, in obtaining the LaKamps' investment. Second, for the Runft Defendants' alleged use of unconscionable methods to obtain the LaKamps' investment. And finally, because elderly persons (i.e. Charles and Marianne LaKamp) were involved when the Runft Defendants violated the ICPA. The investment remains at the center of the LaKamps claim that the ICPA was violated; therefore, the Runft Defendants can recover attorney's fees for this claim under § 12-120(3).

### 4. *Intentional Infliction of Emotional Distress (Claim 4)[4]*

The LaKamps alleged they suffered emotional distress as a result of the Runft Defendants' misrepresentations about the investment, and that such mispresentations qualified as extreme and outrageous conduct. The LaKamps' alleged distress was directly related to the money they invested in the project, so the Runft Defendants may recover under § 12-120(3) for defending against this claim.

### 5. *Unjust Enrichment (Claim 5)*

Again, the LaKamps based their unjust enrichment claim on the fact that the Defendants collectively defrauded them out of their money "through smooth talking and giving false hopes of substantial return on investment." Dkt. 45, at 33. The LaKamps brought their unjust enrichment claim in order to preclude the Runft Defendants from

---

[4] The LaKamps argued they abandoned this claim, so the Runft Defendants are not entitled to fees for defending against it. The LaKamps do not identify any authority or support for this position. Moreover, the Court did not find the LaKamps abandoned this claim until its Memorandum Decision and Order granting summary judgment in favor of the Runft Defendants. As such, the Runft Defendants incurred the costs of litigating this claim—including filing a Motion for Summary Judgment which addressed it. Therefore, the fees associated with the LaKamps' intentional infliction of emotional distress claim will still be awarded. *See Millard v. Talburt*, 544 P.3d 748, 763 (Idaho 2023) (holding a court should take a holistic view of the entire litigation when awarding attorney's fees, including the consideration of actions that increase litigation costs).

"retain[ing] the benefit of the fraudulently obtained money." *Id.* The investment is at the heart of this claim, and § 12-120(3) properly applies.

### 6. *Declaratory Judgment (Claim 6)*

Under this cause of action, the LaKamps sought a declaratory judgment of their rights related to their investment under the Memorandum of Understanding. Thus, the investment was the basis of this claim, and attorney's fees can be awarded under § 12-120(3).

### 7. *Idaho Securities Fraud (Claim 10)*

The LaKamps' securities fraud claim centered on the "misrepresentations and omissions of material fact to Plaintiffs in connection with the purchase and sale of securities in Simco." Dkt. 45, at 38. Again, the investment was the basis for this claim, and fees are appropriate under § 12-120(3).

### 8. *Professional Negligence (Claim 11) & Breach of Fiduciary Duty (Claim 12)*

As mentioned above, the LaKamps oppose an award of fees under § 12-120(3) for claims 11 and 12. In particular, they contend the hiring of an attorney for legal representation is a personal purpose, and not a commercial transaction which would justify an award of fees. The Runft Defendants counter that the LaKamps specifically hired R&S for advice on the investment, such that claims 11 and 12 still constitute claims for which recovery is sought based on a commercial transaction.

An award of fees for a legal malpractice claim under § 12-120(3) may be proper "so long as a commercial transaction occurred between the prevailing party and the party from whom that party seeks fees." *Soignier v. Fletcher*, 256 P.3d 730, 734 (Idaho 2011). A

contract between the parties is not required. *Id.* (citing *City of McCall v. Buxton*, 201 P.3d 629, 665 (Idaho 2009). Rather, where a party attempts to recover in a commercial transaction, regardless of whether there is proof that the commercial transaction actually occurred, a prevailing party may recover fees. *Garner*, 259 P.3d at 615 (quoting *Farmers Nat. Bank v. Shirey*, 878 P.2d 762 (1994)).

The LaKamps' two claims related to attorney malpractice present unique issues in awarding fees here. As the Court previously found, R&S, and Runft's partner, were retained for a completely separate purchase of a property in Nampa that was in no way related to the LaKamps' investment. *See* Dkt. 129, at 52–55. The Nampa property was a personal purchase, so retaining R&S for that purpose was not a commercial transaction. However, the LaKamps' Complaint intertwined such legal representation with allegations that the duty created by that personal retention was violated by Runft's participation in the investment.

Still, as the Court highlighted in its Summary Judgment Order, there was never any attorney-client relationship between the LaKamps and Runft related to the investment, and Charles did not subjectively believe that there was. Dkt. 129, at 52–55. While a contract is not necessary to award fees under 12-120(3), the only attorney-client relationship that could *feasibly* have provided the basis for claims 11 and 12 was the one between the LaKamps and Runft's partner for the purchase of personal property. Charles knew Runft was acting on behalf of IRWS in the investment, and not on his own behalf, and the placement of money in the R&S trust account was solely to serve as an intermediary holding place as the Memorandum of Understanding was resolved between Charles and

the other parties. So, while the investment created complications for any attorney-client relationship the LaKamps had with R&S and Runft's partner, it would not be the basis of recovery had the LaKamps succeeded on their claims for attorney malpractice and breach of fiduciary duty. Therefore, a commercial transaction is not the gravamen of claims 11 and 12, and fees cannot be awarded under § 21-130(3) for these two claims.

In sum, Idaho Code § 21-120(3) provides an adequate basis to award attorney's fees for 7 of the LaKamps' 12 claims. Thus, 58.3% of the total fees requested by the Runft Defendants will be awarded under this theory.

### B.  Idaho Code § 48-608(5)

The Runft Defendants also request an award of fees under the ICPA. To begin, the Court finds that an award of attorney's fees would only be proper under section 48-608(5) for claim 3 because the statutory language limits fees to claims brought under this section, and the only claim the LaKamps alleged under the ICPA was claim 3. In other words, the Court rejects the Runft Defendants' argument that the ICPA is intertwined with all of the LaKamps' claims because they share the same set of facts, and an award is thus appropriate under this section as to all claims.

However, such a finding has limited effect because the Court has already found an award of attorney's fees for claim 3 is proper under Idaho Code § 21-130(3), so it need not explore whether the LaKamps' lawsuit was "spurious or brought for harassment purposes only." The Court would not be able to award additional fees for the same claim, as it must apportion fees based on what qualifies and what does not. Thus, attorney's fees will be

awarded for claim 3 under § 21-130(3), and the Court will not further assess the Runft Defendants' attorney's fees request under the ICPA.

### C. Frivolous Lawsuit

The Runft Defendants contend they should be awarded attorney's fees because the LaKamps continued to litigate this case, and brought a motion for summary judgment, when the LaKamps' allegations were not supported by fact or law. They point out the Court, in its Summary Judgment Order, noted the LaKamps failed to present any evidence to back their claims 24 times. The Runft Defendants further claim the LaKamps purposefully continued to litigate based on lies, of which they were fully aware, as Charles's deposition testimony established. The LaKamps counter that there were legitimate legal issues presented in their motion for summary judgment, so this was not a frivolous case.

To begin, the Court emphasizes that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Awarding fees and costs pursuant to the Court's inherent powers is truly an extraordinary remedy, and a very high bar. This Court acknowledged in its Summary Judgment Order that the evidence set forth in this case was overwhelmingly against the LaKamps' position. Dkt. 129, at 65. That said, highly unfavorable facts do not automatically indicate a frivolous case, even where the parties are aware the cards are stacked against them.

Here, the LaKamps brought a multitude of claims against numerous individuals. The factual events underlying their lawsuit were convoluted, and ultimately the Court determined the LaKamps' perspective of those facts was not accurate. However, the

Court's decision on summary judgment was 66 pages, analyzed dozens of prior cases, and addressed complex legal principles such as securities fraud, veil-piercing, and membership in limited liability companies. While the length of the Court's decision is by no means determinative of the strength of any parties' position, it suffices to note t this case did entail numerous difficult questions that required lengthy analysis.[5]

Further, while the Court did not ultimately find in the LaKamps' favor—and, as Runft Defendants correctly point out, even used strong language indicating the LaKamps' recitation of events was inaccurate—this does not mean that the LaKamps' claims were meritless or without foundation. Determinations as to fraud, consent to membership, whether goods exist under the ICPA, etc., are very fact specific. The Court did not make its findings in this case based on the complete absence of facts, but only after carefully examining such facts (and the applicable law) and finding them wanting. While some of the claims may have been a bit of a stretch and easier for the Court to summarily dismiss, others were more nuanced.

Ultimately, the Court did not find sufficient evidence to support any of the LaKamps' claims and granted summary judgment in the Runft Defendants' favor. Insufficiency, however, is not the same as "frivolous, unreasonable, or without foundation." The latter standard denotes an absence of reason or purpose. Here, the

---

[5] The Court is not implying that any single decision was a particularly "close call," or a "slam dunk." Simply put, the relevant facts in this case—when measured up against the applicable law—warranted an in-depth review.

LaKamps had reasons for bringing the types of claims that they did, the Court simply found such justification was insufficient to withstand summary judgment.

The Court is also unconvinced that the LaKamps continued to pursue this litigation with improper purpose or in bad faith. For example, in *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002)[6], the Ninth Circuit held defense counsel should be sanctioned after representing at trial that they would not seek improper testimony about sensitive sexual information involving the plaintiff but then proceeded to do so anyway. The Ninth Circuit explained awarding attorney's fees was proper to compensate the plaintiff for her embarrassment and pain due to counsel's reckless and knowing conduct, which was indicative of bad faith. *B.K.B.*, 276 F.3d at 1108. Here, there is no showing the LaKamps engaged in reckless or knowing conduct tantamount to bad faith.

To be sure, it was clear from Charles's deposition that he handled the investment poorly, including by signing the Memorandum of Understanding without reading it. At the very least, Charles was woefully underinformed about where his own money was going and what he was getting in return. However, such mismanagement did create doubts as to whether the LaKamps owned an interest in Simco and also created questions as to whether someone else could be held responsible for Charles's dissatisfaction with his investment. While no one else was ultimately responsible, the LaKamps behavior was not knowing or reckless, and did not amount to bad faith. *Id.*

Ultimately, this was not a frivolous lawsuit warranting attorney's fees. Because the

---

[6] The Ninth Circuit abrogated *B.K.B* on other grounds in *Juarez v. Walmart, Inc.*, 2025 WL 1983945 (9th Cir. July 17, 2025).

only basis for awarding fees for claims 7, 8, 9, 11, and 12 the Runft Defendants identify is that this suit was frivolous, they are not entitled to any fees on such claims. Thus, the Runft Defendants will be limited to recovering 58.3% of their total fees and costs.

### D. Lodestar Calculation

As outlined above, the Runft Defendants are entitled to limited attorney's fees under Idaho Code § 12-120(3). The Court will accordingly assess the "lodestar" amount, or the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, to reach an appropriate final award.

#### 1. Reasonable Rates

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Within the relevant community, the court considers the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon*, 132 F.3d at 502 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)).

Here, the Runft Defendants retained their attorney on an hourly basis and paid him $250 per hour. The Runft Defendants were represented by the same attorney—due to the overlap in the claims brought against them—in order "to reduce the cost of litigation." Dkt. 159, at 8. The Runft Defendants' attorney, Eric Swartz, has been practicing general civil litigation in Idaho for nearly 25 years. Swartz asserts the fees charged in this case are "on the low end of the range of prevailing rates for like litigation work in Idaho by firms and

attorneys with experience similar to Defendants' counsel." Swartz also disclosed his hourly

rate has since increased to $350 per hour but notes such a rate was not charged in this case.

*Id.* at 10–11.

The Court agrees with the Runft Defendants' assertion that the rates charged in this

case are equal to, and often less than, other rates that the Court has recently approved. *See,*

*e.g.*, *Mares-Orozco v. Guzman*, 2023 WL 5179674, at *5 (D. Idaho 2023) (finding rates of

$275-300 appropriate); *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*,

2021 WL 2444157, at *15 (D. Idaho 2021) (approving a wide range of fees from $280-

$600 for attorneys based on experience and the relevant markets). Swartz submitted an

affidavit that the rates requested in this case are reasonable in the Boise market, and even

lower than what is reasonable.[7] Dkt. 159-1, at 2. The Court confirms a rate of $250 per

hour is indeed equal to or less than prevailing rates in Boise. Additionally, the LaKamps

have not challenged the reasonableness of the rate whatsoever. For these reasons, the Court

finds the Runft Defendants' requested hourly rate is reasonable.

### 2. Reasonable Hours Expended

A court may exclude from the fee calculation hours that were not "reasonably

expended," such as hours which are "excessive, redundant, or otherwise unnecessary[.]"

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The fee applicant bears the burden of

proof and "can meet his burden—although just barely—by simply listing his hours and

---

[7] As noted above, Swartz is experienced in litigating civil cases in Idaho and is familiar with the prevailing rates charged, and types of fees incurred, in civil litigation in Idaho. He based his conclusion on his own experience and has stated the prevailing rate at the time of the instant Motion had increased to $350-$700 per hour.

identifying the general subject matter of his time expenditures." *Fisher v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (cleaned up). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, the Runft Defendants have provided billing records together with the general subject matter of each time expenditure. Dkt. 159-1, at 6–36. The LaKamps only dispute a few entries as being unreasonable. The Court will address each one in turn. First, the Runft Defendants originally requested $83,721.50 in attorney's fees. They conceded, in their Reply, that the 6/9/2023 entry for $25, 8/4/2023 entry for $75, and 8/9/2023 entry for $300 should not be included in any award. These concessions bring the total fee amount to $83,321.50.

The LaKamps challenge two additional entries as being "excessive amounts for work identified": a 2/22/2021 entry for $1,100. and a 2/25/2021 entry for $400. Dkt. 172, at 8. They object to the first because they do not feel the description supports the 4.4 hours incurred. The description includes numerous email exchanges regarding a discovery and litigation plan, a related telephone call with the client, attendance at a discovery conference, preparation of a notice of appearance and substitution of counsel, and an "issue analysis with staff regarding filings." Dkt. 159-1, at 6. The Court finds it is feasible that such a multitude of activities could reasonably take 4.4 hours. The logistics of exchanging emails, speaking with parties, analyzing issues, etc., all take time, and devoting half a day to a case,

especially in the early stages of litigation, is reasonable. The 2/22/2021 entry will thus be included in an award of fees.

The LaKamps object to the second entry for much the same reasons as the first. Contrary to the 2/22/2021 entry, the 2/25/2021 entry only described an email exchange with all parties and the client related to the litigation and discovery plan, and the plan for proceeding. While email exchanges typically take up less time, there were several parties on the email exchange, the bill was for a total of less than two hours, and the Court is inclined to defer to Swartz's professional judgment on how much time was required to finalize the discovery plan. Therefore, this entry will also be included in an award of fees.

The LaKamps also object to eight entries they claim are not related to the lawsuit, as such entries relate to work regarding the "Valerian preservation." Valerian LLC is an entity that is not a party to this lawsuit, but the Runft Defendants explain Runft has an ownership interest in Valerian, which has ownership in IRWS. As such, the Runft Defendants explain each of the entries which mention Valerian involved confirming these ownership ties to refute the LaKamps' allegations related to Runft's ownership (or lack =thereof) in IRWS. Because the LaKamps' claims were at least partially related to Runft's alleged failure to disclose his interest in IRWS, and his purported inducement of an investment in IRWS with improper motives, it seems necessary for Runft's attorney to understand the exact nature of Runft's interest in IRWS. Therefore, these entries will not be excluded.

The LaKamps challenge two entries—one on 6/2/2021 for $256.50, and one on 11/6/2021 for $190.00—as charges for paralegal services. The challenge is a bit confusing.

The LaKamps really argue the fees should be reduced overall for the above-stated reasons related to a basis for the award. The Court will only award 58.3% of the paralegal fees for the reasons set forth above. However, the Court does not fully understand why the LaKamps singled out the two paralegal entries as being unreasonable. Without any support for such an assertion, those two entries will be included in the overall fee award.

Finally, the last remaining challenge the LaKamps have asserted to any of the fees requested is an entry on 11/23/2021 for $250. Specifically, the entry is related, in part, to an "email exchange with opposing counsel regarding state court action." Dkt. 159-1, at 14. The Runft Defendants claim the time was partially related to the instant federal action because there was no discovery in the state court action, and the latter half of the entry describes a "telephone call with client regarding answers and responses to discovery." *Id.* Because that entry is at least partially related to the state court action, and the Runft Defendants concede work related to the state court action should be excluded, that entry will be reduced by half, with only $125 being awarded in this case.

After careful review, there are no other entries which the Court finds are "excessive, redundant, or otherwise unnecessary[.]" The LaKamps also do not make any additional challenges, and the Runft Defendants have provided adequate support for their entries. Therefore, after the reductions set forth above, the Court finds the lodestar figure of $83,196.50 is presumptively reasonable, and will award 58.3% of that total, absent any adjustments.

### 3. Costs

Under FRCP 54, a prevailing party is entitled to their costs. Fed. R. Civ. P. 54(d)(1).

There is no dispute that the Runft Defendants are prevailing parties, and they have requested $4,495.66 in costs. Just as the LaKamps objected to specific entries for attorney's fees, they do challenge a few specific requests for costs, while also challenging the form in which costs were requested.

First, the LaKamps claim the Runft Defendants failed to use the cost bill local form as required by Local Rule 54.1 and failed to include documentation beyond an itemization for the costs claimed. Second, they claim all costs requested for mediation fees are not allowed by local rule or federal statute. The Runft Defendants counter that the cost bill method of awarding costs under local rules is not the only way for costs to be awarded. "Specifically, non-taxable costs may be awarded where, as here, substantive law at issue provides for a right to the recovery of costs to the prevailing party." Dkt. 179, at 2.

The Runft Defendants did fail to file a cost bill, and there is no evidence that the parties met and conferred regarding costs. It is mandatory to file the local form cost bill, after a meet and confer, for recovery of costs to be possible. *See Burch v. City of Chubbuck*, 2024 WL 4924537, at *1 (D. Idaho June 4, 2024). Thus, because the Runft Defendants failed to comply with Local Rule 54.1(a)(1), they will be denied costs.

The only question that remains before the Court is whether the costs for mediation fees and deposition transcripts can qualify as attorney's fees and costs separately justified under Idaho Code § 12-120(3), as the Runft Defendants argue. The requested mediation fees of $1,500 will not be awarded because "there is no solid legal basis upon which to reimburse such expenses within this District, but also because doing so would potentially act as a disincentive to mediating claims generally." *Kayser v. McClary*, 875 F. Supp. 2d

1167, 1183 (D. Idaho June 22, 2012). As for the deposition transcripts, those are explicitly categorized as costs under 28 U.S.C. § 1920(2). It is clear under FRCP 54 that costs and attorney's fees are two separate categories, as they each have their respective sections, and costs are afforded as a matter of right (when not precluded by a local rule as here) whereas attorney's fees must be separately justified. There is no indication under Idaho Code § 12-120(3) that litigation costs traditionally categorized as costs—such as deposition transcripts—should be awarded as attorney's fees. In fact, Idaho Code § 12-120(3) also explicitly distinguishes between costs and attorney's fees. Accordingly, because the Runft Defendants failed to comply with local rules, they will not be awarded any of their costs.

### 4. Kerr Adjustments

As a final step in the lodestar method, the Court must measure the lodestar figure against the factors—originally laid out in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975)—to determine whether an adjustment to the lodestar figure is necessary. *Mares-Orozco*, 2023 WL 5179674, at *5. The "*Kerr* factors" include the: "(1) time limitations imposed by the client or the circumstances, (2) the 'undesirability' of the case, (3) the nature and length of the professional relationship with the client, and (4) awards in similar cases." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (cleaned up); *Kerr*, 526 F.2d at 70. "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (cleaned up). "The burden of proving that such an adjustment is necessary" is on the party seeking the adjustment. *Blum v. Stenson*, 465 U.S. 886, 898 (1984).

Here, neither party has requested any adjustment from the lodestar figure, nor

pleaded any facts that would indicate such an adjustment would be appropriate. While this case has been lengthy, there are no facts to suggest that the burden of representation fell outside of the relative norm. There is also no indication that there is a unique professional relationship between the Runft Defendants and Swartz. In addition, the lodestar amount of $83,196.50 for 337.8 hours of work is quite low in comparison with awards in similar cases. *See, e.g., Mares-Orozco*, 2023 WL 5179674, at *6 (finding an award of $113,805.50 in fees for 373.10 hours of work fair in comparison to similar cases).

In short, under the totality of circumstances, including the overall reasonableness of both the rates and hours accounted for, the fact that neither party requested an adjustment, and the *Kerr* factors outlined above, the Court finds an adjustment to the lodestar amount is not necessary in this case.

## V. CONCLUSION

The LaKamps brought twelve claims against the Runft Defendants. A commercial transaction was the gravamen of seven of those claims. As such, the Runft Defendants are entitled to an award of attorney's fees under Idaho Code § 12-120(3) on those seven claims but failed to provide an adequate basis for recovery on the other five claims. Accordingly, the Runft Defendants are awarded 58.3% of the reasonable lodestar figure of $83,196.50.

Additionally, the Runft Defendants failed to follow local rules in submitting a bill of costs after a meet and confer and are, therefore, unable to recover their requested costs.

In sum, the Runft Defendants are awarded a total of $48,503.56 in attorney's fees.

///

///

## VI. ORDER

It is **HEREBY ORDERED**:

1. The Runft Defendants' Motion for Attorney's Fees (Dkt. 159) is **GRANTED** in **PART** and **DENIED** in **PART** as outlined above.

2. The Court awards the Runft Defendants attorney's fees in the amount of $48,503.56.

3. The LaKamps must pay the fee award within thirty (30) days of the date of this Order.

DATED: July 28, 2025

David C. Nye
Chief U.S. District Court Judge